IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 06-0418
════════════
 
 
HCBeck, Ltd., 
Petitioner,
 
v.
 
Charles Rice, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second 
District of Texas
════════════════════════════════════════════════════
 
Argued October 18, 2007
 
 
            
Justice Johnson, joined by 
Justice Medina, dissenting.
 
            
The workers’ compensation system is bottomed on a voluntary trade. 
Employers provide workers’ compensation insurance coverage in exchange for 
statutory immunity from suit by employees injured on the job. Employees accept 
workers’ compensation insurance coverage in exchange for releasing their common 
law rights to sue the employer for injuries on the job. In Texas Workers’ 
Compensation Commission v. Garcia, we described the exchange when 
considering a challenge to the constitutionality of the Texas Workers’ 
Compensation Act (TWCA):
 
[T]he 
Act—carrying forward the general scheme of the former act—provides benefits to 
injured workers without the necessity of proving negligence and without regard 
to the employer’s potential defenses. In exchange, the benefits are more limited 
than the actual damages recoverable at common law. We believe this quid pro quo, 
which produces a more limited but more certain recovery, renders the Act an 
adequate substitute for purposes of the open courts guarantee.
 
893 S.W.2d 504, 521 (Tex. 1995).
            
Today the Court says “[a] general workplace insurance plan that binds a 
general contractor to provide workers’ compensation insurance for its subcontractors and its subcontractors’ employees achieves 
the Legislature’s objective to ensure that subcontractors’ employees receive the 
benefit of workers’ compensation insurance.” ___ S.W.3d ___, 
___. It also says HCBeck qualifies as a 
statutory employer because its subcontract with Haley Greer incorporated the 
general workplace insurance plan. Id. at ___. The Court’s decision extends statutory immunity to 
HCBeck without requiring a corresponding substantive 
quid pro quo from it as was intended by the Legislature. The decision enlarges 
the number of entities that can claim that which an employee ostensibly provides 
by releasing his or her common law right to sue—immunity from suit—by merely 
contracting for someone else such as the subcontractor or the owner of a 
project to secure and maintain insurance for the subcontractor. All HCBeck did here was facilitate communications between FMR 
and Haley Greer and agree that HCBeck might in the 
future provide workers’ compensation insurance for Haley Greer. That goes beyond 
what the Legislature intended.[1] Accordingly, I dissent.
            
Pursuant to its contract with HCBeck, FMR 
elected to provide insurance through its OCIP and arranged for an agency to 
secure individual insurance policies for contractors and subcontractors, 
including both HCBeck and Haley Greer. The insurance 
covered only on-site construction activities at FMR’s 
office campus in Westlake. The contractors and subcontractors 
were contractually required to maintain and furnish proof of separate insurance 
for their off-site activities. As to the OCIP insurance, FMR paid the premiums. 
Each contractor and subcontractor adjusted its individual contract price to 
reflect the premiums FMR paid for the coverage of the individual contractor or 
subcontractor. Under HCBeck’s agreement with FMR, if 
FMR elected not to provide insurance via an OCIP, then “upon thirty (30) days 
written notice from the Owner,” HCBeck was required to 
perform the actions FMR actually performed in this case: securing insurers to 
write coverage for the contractors’ on-site Westlake construction activities, 
paying for the coverage, and then adjusting contract prices of the contractors, 
if necessary, to reflect the insurance premiums.[2] But because FMR both secured Haley 
Greer’s insurance and paid for it, HCBeck did neither 
as to the workers’ compensation policy in effect when Rice was injured. Nor had 
HCBeck undertaken any obligation or commitment that 
assured the coverage was in place. HCBeck’s 
substantive function as to the insurance was (1) contractually requiring the 
subcontractor to obtain workers’ compensation insurance through FMR’s plan, and (2) agreeing that it might in the future 
actually secure and pay for coverage if FMR did not.
            
Under HCBeck’s subcontract with Haley Greer, 
HCBeck did not agree to procure the workers’ 
compensation insurance in force for Haley Greer, nor did it agree to pay or 
somehow obligate itself to pay the premiums, or otherwise assure the workers’ 
compensation coverage Haley Greer had in effect when Rice was injured. Haley 
Greer’s subcontract incorporated the contract between FMR and HCBeck. In that contract, HCBeck 
only agreed to secure and pay for insurance if FMR notified HCBeck that FMR was unable or unwilling to furnish the 
coverage under an OCIP. The latter contingency did not occur before Rice was 
injured.
            
Citing section 406.123(a) of the TWCA, the Court says that HCBeck “complied in all respects with the provision in the 
Act that expressly allows it to enter into a written agreement to provide 
workers’ compensation insurance to its subcontractors and their employees.” 
___ S.W.3d at ___. The Court is wrong. Section 406.123 
states that a general contractor and a subcontractor may enter into a written 
agreement under which the general contractor provides workers’ 
compensation insurance for the subcontractor and its employees, not under which 
it agrees to provide the insurance at 
some point. Tex. Lab. Code § 406.123(a). The Act must 
speak of insurance in effect at the time of an employee’s injury as opposed to 
some possible future date; if not, there would be no argument about immunity 
because there would be no injured employee suing the general contractor. The 
statute is clear. If the general contractor and subcontractor enter into a 
contract under which the general contractor provides the insurance, not just 
promises to provide it at some future time, then the general contractor is 
classified as the employer of the subcontractor and the subcontractor’s 
employees for purposes of the TWCA:
 
§ 406.123. 
Election to Provide Coverage; Administrative Violation
 
(a) A 
general contractor and a subcontractor may enter into a written agreement under 
which the general contractor provides workers’ compensation insurance 
coverage to the subcontractor and the employees of the subcontractor.
 
            
. . . .
 
(d) If a 
general contractor . . . elects to provide coverage under Subsection (a) 
. . . the actual premiums, based on payroll, 
that are paid or incurred by the general contractor or 
motor carrier for the coverage may be deducted from the contract price or other 
amount owed to the subcontractor . . . .
 
(e) An 
agreement under this section makes the general contractor the employer of the 
subcontractor and the subcontractor’s employees only for purposes of the 
workers’ compensation laws of this state.
 
(f) A 
general contractor shall file a copy of an agreement entered into under this 
section with the general contractor’s workers’ compensation insurance carrier 
not later than the 10th day after the date on which the contract is executed. If 
the general contractor is a certified self-insurer, the copy must be filed with 
the [Workers’ Compensation] division.
 
(g) A 
general contractor who enters into an agreement with a subcontractor under this 
section commits an administrative violation if the contractor fails to file a 
copy of the agreement as required by Subsection (f).
 
Tex. Lab. Code 
§ 406.123 (emphasis added).
            
In construing statutes, we ascertain and give effect to the Legislature’s 
intent as expressed by the statutory language. City of 
Rockwall v. Hughes, 246 S.W.3d 621, 625 
(Tex. 
2008). We use definitions prescribed by the Legislature and any technical 
or particular meaning the words have acquired; otherwise, we construe the 
statute’s words according to their plain and common meaning unless a contrary 
intention is apparent from the context or such a construction leads to absurd 
results. Id. at 625-26; see Tex. Gov’t Code § 311.011.
            
The Legislature did not define “provides” or “provide” as those words are 
used in section 406.123. Looking to the common meaning of “provide,” we find the 
definition includes to “supply,” “furnish,” or “make available.” Webster’s New Universal Unabridged Dictionary 
1556 (1996); see Tex. 
Gov’t Code § 
311.011(a). The “make available” part of the definition is 
of little applicability when the key to obtaining statutory employer status is a 
quid pro quo. See Garcia, 893 S.W.2d at 521. To 
“make available” the insurance, all a general contractor would have to do is 
refer the subcontractor to an insurer or agent who would write the coverage or 
require the subcontractor to apply for insurance with an owner such as FMR. The 
general contractor does not trade anything of value in such a situation. Section 
406.123 does not express Legislative intent to change the fundamental quid pro 
quo concept underlying relationships between workers and those who could be 
subject to common law liability for on-the-job injuries to workers. See 
Tex. Lab. Code § 
406.123. Therefore, the “supply” or “furnish” part of the 
definition is applicable here. The two words essentially are the same: “supply” 
means to “furnish or provide with what is lacking or requisite,” Webster’s New Universal Unabridged Dictionary 
1912 (1996), while “furnish” means to “provide or supply” with something. 
Id. at 
777.
            
The Court views HCBeck as having provided, that 
is, supplied or furnished, Haley Greer’s insurance by contractually requiring 
Haley Greer to participate in FMR’s OCIP. For the same 
reasons expressed above as to making the insurance “available,” even if HCBeck’s actions fall within an expansive construction of 
supplying, furnishing, or providing the insurance, its actions do not warrant 
statutory employer status because HCBeck still did not 
contribute anything of value—a quid pro quo—to the trade Haley Greer’s employees 
made for workers’ compensation coverage. Moreover, HCBeck’s actions simply do not equate to supplying or 
furnishing the insurance. By contractually requiring Haley Greer to enroll in 
the OCIP, HCBeck supplied or furnished Haley Greer 
with the opportunity and obligation to apply for insurance; it did not provide 
the insurance itself. FMR supplied or furnished the insurance when FMR secured 
the agency to place the insurance and paid the premiums. Absent payment of, or 
incurring liability for, premiums by FMR, the insurance that covered Rice when 
he was injured would not have gone into effect and been in place.
            
The parties, the Court, and I agree this matter should be determined by 
what actually happened, not what might have happened. As to what actually 
happened, HCBeck substantively functioned only as a 
conduit through which FMR’s insurance requirements 
were communicated to and imposed on Haley Greer. Otherwise, HCBeck played no part in locating the agent who placed the 
insurance or in securing and making certain the insurance remained in effect. 
For a general contractor such as HCBeck to “provide” 
workers’ compensation insurance to a subcontractor under section 406.123 and in 
exchange receive the significant benefit of statutory employer status, the 
Legislature surely intended that the general contractor must do more than 
communicate insurance requirements or contractually require other parties to 
maintain the insurance in effect, even if the contract requires a subcontractor 
to enroll in a program in which the project owner contractually agrees to 
purchase the subcontractor’s insurance.
            
The Court’s opinion could be interpreted as allowing a general contractor 
to claim statutory employer status by agreeing in a subcontract to provide 
workers’ compensation insurance, yet also requiring the subcontractor to provide 
coverage if the contractor does not. Then, so long as the subcontractor 
maintains coverage, the general contractor would have contributed nothing to the 
trade by the subcontractor’s employees of their common law rights, yet may claim 
statutory immunity because it contractually “provided” the insurance. The 
Court’s holding might even be interpreted as giving a general contractor 
statutory employer status if it contractually required a subcontractor to 
provide workers’ compensation insurance on its own, so long as the subcontractor 
maintained coverage. Again, the general contractor would have exchanged nothing 
for the subcontractor’s employees’ release of their common law rights against 
the general contractor. Section 406.123 of the TWCA does not reflect legislative 
intent that general contractors should have statutory immunity when their 
involvement in assuring workers’ compensation insurance coverage for the 
subcontractor and its employees is so minimal. See Tex. Lab. Code § 
406.123. I would hold that in order for a general 
contractor to be afforded statutory employer status because it “provides” 
workers’ compensation insurance to a subcontractor, the general contractor must 
be more substantively involved in securing and maintaining the subcontractor’s 
workers’ compensation insurance coverage than was HCBeck, and that contracting for another to place and 
maintain insurance, whether to be done in the present or the future, is not 
enough to qualify for the status.
            
I would hold that under section 406.123, a general 
contractor “provides” workers’ compensation insurance if the general 
contractor “puts something in the pot,” that is, if it contributes something of 
value for statutory immunity. It could do that by taking actions to assure (1) 
the subcontractor is insured, and (2) the insurance will not lapse without the 
contractor allowing it to do so. Such actions would equate to substantive 
involvement by the general contractor in obtaining and maintaining the 
subcontractor’s insurance. But for the general contractor’s actions to reach a 
level of substantive involvement warranting statutory employer status, coverage 
would have to actually be assured by the general contractor and not be dependent 
merely on the fulfillment of a contractual obligation or the payment of premiums 
by another party, such as a subcontractor that might be under financial pressure 
to save money by stopping payment of its insurance premiums or an owner that 
might run short of funds and stop paying insurance premiums. In other words, the 
general contractor would have to place itself in a position to have actual 
control over the workers’ compensation insurance becoming effective and 
remaining in force.
            
There could be flexibility in how such substantive involvement 
requirements are met. For example, as to the first requirement referenced above, 
the statute specifically contemplates a situation in which the subcontractor’s 
insurance is “provided” if a general contractor adds the subcontractor and its 
employees as insureds under the general contractor’s 
workers’ compensation policy. See id. § 406.123(f) (requiring a 
general contractor to file a copy of an agreement under section 406.123 with its 
workers’ compensation carrier or, if self-insured, the Workers’ Compensation 
Division); id. § 406.123(g) (making the failure to file 
a copy of the contract in accordance with subsection (f) an administrative 
violation). But the requirement might also be fulfilled by the general 
contractor requiring the subcontractor or its insurer to furnish a certificate 
of insured status from the insurance company, or a copy of a policy showing 
coverage for the job activities in question. As to the second referenced 
requirement, the essential element to keeping insurance in force is payment of 
premiums. That requirement is most clearly fulfilled when the general contractor 
is directly liable for the policy premiums so the insurer either receives 
premiums from the general contractor or the insurer has an unqualified guaranty 
from the general contractor that the premiums will be paid. See, e.g., id. § 406.123(d) (stating 
that a general contractor that provides coverage to a subcontractor under a 
written agreement to do so may deduct the actual premiums, based on payroll, 
that the general contractor pays or incurs for the coverage from amounts owed to 
the subcontractor). There are methods by which the general contractor could 
become directly liable for premiums and assure the insurance does not lapse 
other than by directly paying premiums—for example, by letter of credit that the 
insurer could draw against if premiums were not paid otherwise. It is worth 
noting here that section 406.123 does not specify who must finally absorb the 
subcontractor’s premium cost. The statute authorizes premiums paid or incurred 
for a subcontractor’s insurance to be deducted from amounts owed to the 
subcontractor. Id. But the statute does not preclude 
the owner from bearing the premium cost, as FMR did in this case. And clearly, 
the general contractor could absorb the cost without looking to any other party 
for reimbursement.
            
The Court says “the reality is that HCBeck was 
actually paying for the workers’ compensation insurance” because HCBeck contracted to pay the “Subcontract Amount” that did 
not include premiums FMR paid for Haley Greer’s insurance as opposed to 
contractually deducting the premiums from Haley Greer’s subcontract. ___ S.W.3d at ___. It concludes there is no real distinction 
between the two methods of paying the insurance premiums because it is “simply 
accounting.” Id. at 
___. In this case, though, the distinction matters. Insofar as the 
workers’ compensation insurance that covered Rice, HCBeck was a bystander. It was an interested bystander to be 
sure; but it was a bystander. FMR bought and paid for Haley Greer’s insurance. 
It received and checked Haley Greer’s wage reports on which the compensation 
insurance premiums were calculated. It determined the amount by which Haley 
Greer’s subcontract was adjusted for the premiums. And the money to pay Haley 
Greer’s subcontract came from FMR. HCBeck did not 
actually pay Haley Greer’s premiums, FMR did. HCBeck 
had no more involvement in “providing” the workers’ compensation insurance 
covering Rice for his injury on FMR’s Westlake job than it had 
in “providing” Haley Greer’s workers’ compensation insurance for off-site 
operations. In both instances HCBeck contractually 
required Haley Greer to have the insurance in place, but HCBeck neither secured placement of the insurance nor 
assured its being in force at the time of Rice’s injury.
            
The question before us is not whether OCIPs are 
the best or most efficient and economical way to secure insurance—including 
workers’ compensation insurance—for all workers on job sites. Nor is it how 
OCIPs interface with workers’ compensation law. Those 
matters are significant, but they are more in the nature of policy issues better 
left to the Legislature to balance and address. The question before us is 
limited to whether under these particular circumstances the Legislature extended 
statutory immunity from suit by an injured worker—the major incentive for an 
employer to carry workers’ compensation insurance—to an entity that is not the 
injured worker’s direct employer. Under the Court’s decision, that important 
inducement for carrying workers’ compensation insurance is extended to HCBeck even though it did not substantively participate in 
the transaction that resulted in Rice being covered by workers’ compensation 
insurance.
            
I would hold that HCBeck was not Rice’s 
statutory employer. I would affirm the judgment of the court of appeals.
 
 
            
            
            
            
            
            
________________________________________
            
            
            
            
            
            
Phil Johnson
            
            
            
            
            
            
Justice
 
OPINION DELIVERED: April 
3, 2009






[1] 
The issue of whether HCBeck has immunity on some basis 
other than as an employer is not before us.  See Tex. Lab. Code 
§ 408.001(a) (“Recovery of workers’ compensation benefits is the exclusive 
remedy of an employee covered by workers’ compensation insurance coverage or a 
legal beneficiary against the employer or an agent or employee of the employer 
for the death of or a work-related injury sustained by the employee.”)

[2] 
Rice disputes this point and asserts that the agreements required Haley Greer to 
provide its own insurance if FMR did not.  Because I would reach the same 
conclusion regardless of whether HCBeck or Haley Greer 
was required to provide the insurance if FMR did not, I assume the documents 
required HCBeck to do 
so.